UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAMO DEMOLITION COMPANY,
d/b/a ADAMO GROUP INC., and ADAMO
GROUP, a foreign profit corporation,

                Plaintiff,

vs.

INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 150, and
JAMES M. SWEENEY, an individual,

                Defendants.
_____/

CUMMINGS, McCLOREY, DAVIS &
ACHO, P.L.C.
By:  **RONALD G. ACHO** (P23913)
    **MARGARET LOURDES** (P55601)
17436 College Parkway
Livonia, MI  48152
(734) 261-2400 / FAX (734) 261-2400
racho@cmda-law.com
mlourdes@cmda-law.com
Attorneys for **Plaintiff**
_____/

## <u>VERIFIED COMPLAINT</u>

Plaintiff ADAMO DEMOLITION COMPANY, which does business as ADAMO GROUP, INC. and ADAMO GROUP ("Adamo"), and for its Verified Complaint against Defendant International Union of Operating Engineers Local 150 and Defendant James M. Sweeney, states as follows:

## PARTIES

1.      Plaintiff ADAMO DEMOLITION COMPANY is a for-profit corporation incorporated under the laws of the State of Florida and whose principal place of business is in Wayne County, Michigan.

2.      ADAMO GROUP, INC. and ADAMO GROUP are assumed names of ADAMO DEMOLITION COMPANY. (ADAMO DEMOLITION COMPANY, ADAMO GROUP, INC. and ADAMO GROUP will collectively be referred to as "Adamo"),

3.      Defendant INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 150 ("Defendant Union") is a labor organization with a principal place of business at 6200 Joliet Road, Countryside, County of Cook, State of Illinois, but engages in business matters within the Eastern District of Michigan.

4.      Defendant JAMES M. SWEENEY ("Defendant Sweeney") is President of Defendant Union.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims and the parties in this matter pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, and this matter is between citizens of different states.

6. This Court has personal jurisdiction over the Defendants pursuant to M.C.L. § 600.705 and M.C.L. § 600.715 because the Defendants, by their tortious conduct, caused acts to be done, and consequences to occur, within the Eastern District of Michigan.

7. Defendant Union and Defendant President have engaged in business within the Eastern District of Michigan.

8. Defendant Union and Defendant President have established the requisite minimum contacts subjecting themselves to personal jurisdiction within the Eastern District of Michigan through numerous phone calls, text messages, electronic e-mails, and first class mail United States mail directed to and received by Adamo, machine operators, and workers present for Adamo.

9. Defendant Union and Defendant Sweeney have established the requisite minimum contacts subjecting themselves to personal jurisdiction within the Eastern District of Michigan by sending letters via United States mail after the Project was completed to Michigan and received in Michigan. Such letters exclusively arise out of the recipients' activities and presence as Adamo operators and workers at the Project and are more specifically described as follows:

      a. Defendant Union and Defendant Sweeney sent communications to Gary Corlew, a worker who worked for Adamo, and a resident of the Eastern District of Michigan; further Defendants

have filed charges against Gary Corlew in the Eastern District of Michigan, and the notices and communications related thereto, were all received within the Eastern District of Michigan.

b.     Defendant Union and Defendant Sweeney have sent communications to Gunner Cuppetilli, a worker who worked for Adamo, and a resident of the Eastern District of Michigan; further, Defendants have filed charges against Gunner Cuppetilli in the Eastern District of Michigan, and the notices and communications related thereto, were all received within the Eastern District of Michigan.

c.     Defendant Union and Defendant Sweeney have sent communications to Nicolas Cuppetilli, a worker who worked for Adamo, and a resident of the Eastern District of Michigan; further, Defendants have filed charges against Nicolas Cuppetilli in the Eastern District of Michigan, and the notices and communications related thereto, were all received within the Eastern District of Michigan.

d.     Defendant Union and Defendant Sweeney have sent communications to Larry Davis, a worker who worked for Adamo, and a resident of the Eastern District of Michigan; further, Defendants

have filed charges against Larry Davis in the Eastern District of Michigan, and the notices and communications related thereto, were all received within the Eastern District of Michigan.

e.      Defendant Union and Defendant Sweeney have sent communications to Tom Francis, a worker who worked for Adamo, and a resident of the Eastern District of Michigan; further, Defendants have filed charges against Tom Francis in the Eastern District of Michigan, and the notices and communications related thereto, were all received within the Eastern District of Michigan.

f.      Defendant Union and Defendant Sweeney have sent communications to Greg Hanson, a worker who worked for Adamo, and a resident of the Eastern District of Michigan; further, Defendants have filed charges against Greg Hanson in the Eastern District of Michigan, and the notices and communications related thereto, were all received within the Eastern District of Michigan.

g.      Defendant Union and Defendant Sweeney have sent communications to Chuck Harris, Jr., a worker who worked for Adamo, and a resident of the Eastern District of Michigan, and they have filed charges against Chuck Harris, Jr. in the Eastern District of Michigan; further, the Defendants and the notices and

communications related thereto, were all received within the Eastern District of Michigan.

h.      Defendant Union and Defendant Sweeney have sent communications to Dave Maynarich, a worker who worked for Adamo, and a resident of the Eastern District of Michigan, and they have filed charges against Dave Maynarich in the Eastern District of Michigan; further, the Defendants and the notices and communications related thereto, were all received within the Eastern District of Michigan.

i.      Defendant Union and Defendant Sweeney have sent communications to Gene Beaulieu, a worker who worked for Adamo, and a resident of the Eastern District of Michigan, and they have filed charges against Gene Beaulieu, in the Eastern District of Michigan; further, the Defendants and the notices and communications related thereto, were all received within the Eastern District of Michigan.

j.      Defendant Union and Defendant Sweeney have sent communications to Tory Morgan, a worker who worked for Adamo, and a resident of the Eastern District of Michigan, and they have filed charges against Tory Morgan in the Eastern District of Michigan;

further, the Defendants and the notices and communications related thereto, were all received within the Eastern District of Michigan.

k.      Defendant Union and Defendant Sweeney have sent communications to Angelo Bridges, a worker who worked for Adamo, and a resident of the Eastern District of Michigan, and they have filed charges against Angelo Bridges in the Eastern District of Michigan; further, the Defendants and the notices and communications related thereto, were all received within the Eastern District of Michigan.

l.      Defendant Union and Defendant Sweeney have sent communications to Randy Muxlow, a worker who worked for Adamo, and a resident of the Eastern District of Michigan, and they have filed charges against Randy Muxlow in the Eastern District of Michigan; further, the Defendants and the notices and communications related thereto, were all received within the Eastern District of Michigan.

m.      Defendant Union and Defendant Sweeney have sent communications to Brian Parker, a worker who worked for Adamo, and a resident of the Eastern District of Michigan, and they have filed charges against Brian Parker in the Eastern District of Michigan;

further, the Defendants and the notices and communications related thereto, were all received within the Eastern District of Michigan.

n.      Defendant Union and Defendant Sweeney have sent communications to Kevin Paul, a worker who worked for Adamo, and a resident of the Eastern District of Michigan, and they have filed charges against Kevin Paul in the Eastern District of Michigan; further, the Defendants and the notices and communications related thereto, were all received within the Eastern District of Michigan.

o.      Defendant Union and Defendant Sweeney have sent communications to Dan Pieprzak, a worker who worked for Adamo, and a resident of the Eastern District of Michigan, and they have filed charges against Dan Pieprzak in the Eastern District of Michigan; further, the Defendants and the notices and communications related thereto, were all received within the Eastern District of Michigan.

p.      Defendant Union and Defendant Sweeney have sent communications to Hubert Robertson, a worker who worked for Adamo, and a resident of the Eastern District of Michigan, and they have filed charges against Hubert Robertson in the Eastern District of Michigan; further, the Defendants and the notices and

communications related thereto, were all received within the Eastern District of Michigan.

      q.     Defendant Union and Defendant Sweeney have sent communications to Mike Roediger a worker who worked for Adamo, and a resident of the Eastern District of Michigan, and they have filed charges against Mike Roediger in the Eastern District of Michigan; further, the Defendants and the notices and communications related thereto, were all received within the Eastern District of Michigan.

      r.     Defendant Union and Defendant Sweeney have sent communications to Paul Sherman, a worker who worked for Adamo, and a resident of the Eastern District of Michigan, and they have filed charges against Paul Sherman in the Eastern District of Michigan; further, the Defendants and the notices and communications related thereto, were all received within the Eastern District of Michigan.

      s.     Defendant Union and Defendant Sweeney have sent communications to Tim Sherman, a worker who worked for Adamo, and a resident of the Eastern District of Michigan, and they have filed charges against Tim Sherman in the Eastern District of Michigan; further, the Defendants and the notices and communications related thereto, were all received within the Eastern District of Michigan.

t.      Defendant Union and Defendant Sweeney have sent communications to Patrick Theriault, a worker who worked for Adamo, and a resident of the Eastern District of Michigan, and they have filed charges against Patrick Theriault in the Eastern District of Michigan; further, the Defendants and the notices and communications related thereto, were all received within the Eastern District of Michigan.

u.      Defendant Union and Defendant Sweeney have sent communications to Adam Thieray a worker who worked for Adamo, and a resident of the Eastern District of Michigan, and they have filed charges against Adam Thieray in the Eastern District of Michigan; further, the Defendants and the notices and communications related thereto, were all received within the Eastern District of Michigan.

v.      Defendant Union and Defendant Sweeney have sent communications to Eugene Waller, a worker who worked for Adamo, and a resident of the Eastern District of Michigan, and they have filed charges against Eugene Waller in the Eastern District of Michigan; further, the Defendants and the notices and communications related thereto, were all received within the Eastern District of Michigan.

10.    The Prime Contractor for the Project is Commercial Contracting Corporation ("CCC"), a Michigan domestic for-profit corporation, whose headquarters and principal place of business are within the Eastern District of Michigan.

## COMMON ALLEGATIONS

11.    Adamo is a nationwide demolition company headquartered in the City of Detroit, Wayne County, State of Michigan.

12.    Adamo is a leading company in the demotion industry throughout the United States in the areas of decontamination, decommissioning and demolition.

13.    Adamo has enjoyed an excellent relationship with the International Union of Operating Engineers.

14.    Adamo also enjoys longstanding, harmonious relations with other Locals that are part of the International Union of Operating Engineers throughout the United States.

15.    The incidents that form the basis for this Verified Complaint are extraordinary, egregious, and unlike anything Adamo has experienced with any other Local that is part of the International Union of Operating Engineers.

16.    All of the incidents have occurred since March 2018, and are continuing to date.

17.     Adamo was awarded a subcontract by the Prime Contractor, CCC, which is headquartered in Auburn Hills, Michigan, to complete a substantial demolition project at the Ford Assembly Plant, in the City of Chicago, Cook County, Illinois ("the Project").

18.     On or about March 9, 2018, before commencement of the Project, Adamo advised the Defendant Union that it needed to provide approximately 86 experienced, trained and qualified machine operators for the Project.

19.     Adamo informed the Defendant Union it would provide 35 qualified operators, that they also had four operators in place from Local 150, therefore, leaving a need for Local 150 to provide an additional 47 experienced, trained and qualified operators.

20.     Adamo also placed the Defendant Union and Defendant Sweeney on notice, multiple times and throughout the pendency of the Project, that the job was extremely time sensitive and any failure or refusal to dispatch experienced, trained and qualified workers would create significant monetary damages, interfere with, hinder and harm Adamo's ability to meet its contractual obligations to CCC and Ford.

21.     Adamo also placed the Defendant Union on notice, multiple times and throughout the pendency of the Project, that any failure or refusal to provide the required number of experienced, trained and qualified operators would interfere

with, harm and hinder Adamo's ability to meet its contractual duties to CCC and Ford.

22.     Adamo also put the Union on notice, multiple times and throughout the pendency of the Project, that experienced, trained and qualified operators were indispensable for creating a safe work environment and any failure to provide them would interfere with, harm and hinder Adamo's ability to meet its contractual duties to CCC and Ford.

23.     Despite such notices, Defendant Union and Defendant Sweeney willfully refused to provide Adamo contact information for proposed workers, refused to give reasonable assurances to Adamo that operators were experienced, trained and qualified before they were dispatched, and refused to fulfill Adamo's request to verify and confirm their qualifications.

24.     Defendant Union and Defendant Sweeney took deliberate steps to actively and purposefully interfere with the Project's progression by inhibiting the experienced, trained and qualified union operators Adamo provided.

25.     At one point, the Executive Vice President of Adamo, Rick Cuppetilli, encountered a Union representative on the Project who stated to him: "Off the record, the Union sent me over here to cause trouble for Adamo."

26.     Defendant Union repeatedly and maliciously interfered with Adamo's performance by ordering numerous, highly experienced, trained and qualified

operators provided by Adamo to immediately stop work and "Get off the machines".

27.     Defendant Union and Defendant Sweeney, knowingly, willfully and maliciously attempted to displace experienced, trained and qualified operators through pressure tactics and intimidation and replace them with grossly unqualified operators.

28.     These repeated acts of interference caused disruption and difficulty for Adamo in satisfying their obligations to CCC and Ford under the contract.

29.     Defendant Union continued to willfully and defiantly ban experienced, trained and qualified union operators from the site, even after being told on or about March 5, 2019 by the International Operating Engineers Union to cease its interference and allow the experienced, trained and qualified union operators provided by Adamo to work.

30.     Examples of events resulting from unqualified operators being forced onto Adamo by the Defendant Union and Defendant Sweeney include, but are not limited to:

> a. An unqualified operator, who was so unfamiliar with heavy machinery he was sent to operate, he was immediately dismissed by a supervisor because he literally did not know how to make the machine move forward and was creating an imminent danger on the plant floor.

b.  Experienced, trained and qualified operators expressing serious, safety concerns because of unqualified operators on the floor, with one operator admitting to Adamo, "…We are lucky no one was hurt…."

c.  An unqualified operator erroneously damaged a metal beam in the plant during operations amassing over $75,000.00 in damages and creating imminent danger to his surrounding coworkers.

d.  Workers sent by the Defendants to operate dangerous and heavy equipment that were so untrained for the positions they were accompanied by men wearing orange vests marked "TRAINER."

31.     The interference by Defendant Union and Defendant Sweeney with the Project, and their willful supplanting of experienced, trained and qualified operators caused Adamo to breach certain contractual duties to CCC and Ford.

32.     Defendant Union and Defendant President by maliciously forcing these unqualified workers onto Adamo, created unnecessary delays, extra payroll and benefits obligations, orientation costs, caused damages to personal and real property, and interfered with Adamo's contractual relationship, and prospective advantageous business expectancies with CCC and Ford.

33.     Upon information and belief, beginning in March, 2019 and continuing through the date of this Verified Complaint, agents of Defendant Union

and Defendant President have and are intentionally and maliciously publishing to third parties unprivileged, injurious, false and defamatory statements concerning Adamo.

34.    Such injurious, false and defamatory statements are affecting Adamo's good reputation with operators, employees, the community at large, and other business alliances.

35.    These repeated acts of interference caused disruption and difficulty for Adamo in satisfying their obligations to CCC and Ford under the contract.

## COUNT I

## TORTIOUS INTERFERENCE WITH CONTRACT
## WITH COMMERCIAL CONTRACTING CORPORATION

36.    Plaintiff re-alleges, restates, and incorporates by reference all allegations contained in the preceding Paragraphs of this Verified Complaint as though fully restated below.

37.    Adamo entered into a valid contract with CCC to provide demolition services for the Project.

38.    Defendants knew Adamo's valid contract existed with CCC and knew of its obligations to Ford.

39.    The Defendants' actions, including but not limited to the actions set forth in the preceding paragraphs, unjustifiably instigated a breach of the contract.

40.     Actions, such as but not limited to, the Defendants causing experienced, trained and qualified operators not to work on the Project and causing unqualified operators to work on the Project were deliberate actions which instigated and lead to contractual breaches involving Adamo, CCC and Ford.

41.     As a result of Defendants' malicious, willful, and wanton, conduct, as set forth herein, Adamo has sustained damages including, but not limited to, economic damages.

42.     The nature of Defendants' malicious and unjustified interferences with Adamo's rights and the diminishment Defendants caused to such things as Adamo's good reputation and longstanding goodwill entitles Adamo to exemplary damages.

43.     Defendant's tortious interference with Adamo's contract with CCC has caused Adamo to incur damages in excess of Seventy-Five Thousand ($75,000.00) Dollars.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court award Plaintiff damages in excess of $75,000, to which it is entitled, including, but not limited to economic damages, exemplary damages, punitive damages, costs, interest and attorney fees.

## COUNT II

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS OR EXPECTANCIES WITH COMMERCIAL CONTRACTING CORPORATION

44.     Plaintiff re-alleges, restates, and incorporates by reference all allegations contained in the preceding Paragraphs of this Verified Complaint as though fully restated below.

45.     Adamo had business relationships or expectancies with CCC at the time of Defendants' tortious interference.

46.     Adamo's business relationships or expectancies with CCC had a reasonable likelihood of future economic benefit for Adamo.

47.     Defendants knew of the business relationships or expectancies that Adamo had with CCC at the time of Defendants' tortious interference.

48.     Defendants intentionally interfered with the business relationships or expectancies that Adamo had with CCC, by actively, maliciously and tortiously interfering with the experienced, trained and qualified operators Adamo provided in furtherance of the Adamo's responsibilities to the Project, and with Adamo's ability to perform work on the Project, as set forth in the preceding Paragraphs.

49.     Defendants' actions to interfere with Adamo's business relationships or expectancies with CCC were malicious and without justification and were done

with the purpose of invading and interfering with Adamo's business relationships or expectancies with CCC.

50.    Defendants' wrongful conduct has caused a disruption in Adamo's business relationship or expectancy with CCC.

51.    As a result of Defendants' unjustified, tortious, malicious, willful, and wanton, conduct, as set forth herein, Adamo has sustained damages including, but not limited to, economic damages.

52.    The nature of Defendants' malicious and unjustified interferences with Adamo's rights and the diminishment Defendants caused to such things as Adamo's good reputation and longstanding goodwill entitles Adamo to exemplary damages.

53.    Defendant's improper, unjustified, and tortious interference with Adamo's business relationships or expectancies with CCC has caused Adamo to incur damages in excess of Seventy-Five Thousand ($75,000.00) Dollars.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court award Plaintiff damages in excess of $75,000, to which it is entitled, including, but not limited to economic damages, exemplary damages, punitive damages, costs, interest and attorney fees.

## COUNT III

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS OR EXPECTANCIES - FORD MOTOR COMPANY

54.     Plaintiff re-alleges, restates, and incorporates by reference all allegations contained in the preceding Paragraphs of this Verified Complaint as though fully restated below.

55.     Adamo had a history of longstanding and profitable business relationships or expectancies with Ford Motor Company at the time of Defendants' tortious interference.

56.     Adamo's business relationships or expectancies with Ford Motor Company had a reasonable likelihood of future economic benefit for Adamo.

57.     Defendants knew of the business relationships or expectancies that Adamo had with Ford Motor Company at the time of Defendant's tortious interference.

58.     Defendants intentionally interfered with the business relationships or expectancies that Adamo had with Ford Motor Company, by actively, maliciously and tortiously interfering with experienced, trained and qualified operators Adamo provided in furtherance of performing its job responsibilities, and with Adamo's ability to perform work on the Project, as set forth in the preceding Paragraphs.

59.     Defendants actions to interfere with Adamo's business relationships or expectancies with Ford Motor Company were malicious and without

justification and were done with the purpose of invading and interfering with Adamo's business relationships or expectancies with Ford Motor Company.

60.     Defendants' conduct has caused a disruption in Adamo's business relationship or expectancy with Ford Motor Company.

61.     As a result of Defendants' improper, unjustified, malicious, willful, tortious and wanton, conduct, as set forth herein, Adamo has sustained damages including, but not limited to, economic damages.

62.     The nature of Defendants' improper and unjustified interferences with Adamo's rights, and the damage Defendants caused to such things as Adamo's good reputation and longstanding goodwill, entitles Adamo to exemplary damages.

63.     Defendants' improper, unjustified, and tortious interference with Adamo's business relationships or expectancies with Ford Motor Company has caused Adamo to incur damages in excess of Seventy-Five Thousand ($75,000.00) Dollars.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court award Plaintiff damages in excess of $75,000 to which it is entitled, including, but not limited to economic damages, exemplary damages, punitive damages, costs, interest and attorney fees.

**COUNT IV**

**TORTIOUS INTERFERENCE WITH BUSINESS
RELATIONSHIPS OR EXPECTANCIES  - UNION OPERATORS**

64.    Plaintiff re-alleges, restates, and incorporates by reference all allegations contained in the preceding Paragraphs of this Verified Complaint as though fully restated below.

65.    Adamo had long and profitable business relationships or expectancies with union operators at the time of Defendants' tortious interference.

66.    Adamo's business relationships or expectancies with said operators had a reasonable likelihood of future economic benefit for Adamo and, in fact, good relationships with union operators are mandatory for Adamo's success.

67.    Defendants knew of the business relationships or expectancies that Adamo had with said union operators at the time of Defendants' tortious interference.

68.    Defendant intentionally interfered with Adamo's business relationships or expectancies with said union operators, by actively, maliciously and tortiously interfering with the operators in the performance of their job responsibilities, and with Adamo's ability to perform work on the Ford Project, as set forth in the preceding Paragraphs.

69.     Defendants further intentionally interfered with Adamo's business relationships or expectancies with the operators by threatening, harassing and intimidating the employees on a regular and continued basis.

70.     Defendant's actions to interfere with Adamo's business relationships or expectancies with such operators was malicious and without justification and were done with the purpose of invading and interfering with Adamo's business relationships or expectancies with its workers.

71.     Defendant's conduct has caused a disruption in Adamo's business relationship or expectancy with its employees.

72.     As a result of Defendants' unjustified, tortious, malicious, willful, and wanton, conduct, as set forth herein, Adamo has sustained damages including, but not limited to, economic damages.

73.     The nature of Defendants' malicious and unjustified interferences with Adamo's rights and the diminishment Defendants caused to such things as Adamo's good reputation and longstanding goodwill entitles Adamo to exemplary damages.

74.     Defendant's improper, unjustified, and tortious interference with Adamo's business relationships or expectancies with its employees has caused Adamo to incur damages in excess of Seventy-Five Thousand ($75,000.00) Dollars.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court award Plaintiff damages in excess of $75,000 to which it is entitled, including, but not limited to economic damages, exemplary damages, punitive damages, costs, interest and attorney fees.

## COUNT V

## INJURIOUS FALSEHOODS HARMFUL TO ADAMO'S INTERESTS

75.     Plaintiff re-alleges, restates, and incorporates by reference all allegations contained in the preceding Paragraphs of this Verified Complaint as though fully restated below.

76.     Defendants, and their agents on behalf of Defendant Union, and with the Defendant Union's consent and under its directions, intentionally published false statements to experienced, trained and qualified, union operators provided by Adamo and whose work was necessary and critical for Adamo to fulfill its contractual obligations to CCC and Ford.

77.     The Defendants intentionally made such statements intending to harm Adamo by orchestrating shortfalls in workers and hindering the progression of Adamo's work.

78.     The Defendants recognized or should have recognized the false statements likely would result in harmful shortfalls and the harmful hindrance of Adamo's work.

79.    The Defendants knew the statements were false or acted with such statements with reckless regard to their truth or falsity.

80.    Such statements included, but were not limited to, falsely stating the workers must get off of machines and stop working.

81.    Experienced, trained and qualified operators, hearing the false statements made by the Defendants, acted upon such false statements and ceased working, and left the job site, resulting in substantial harm to Adamo.

82.    As a result of Defendants' malicious, willful, and wanton, conduct, as set forth herein, Adamo has sustained damages including, but not limited to, economic, pecuniary damages.

83.    The nature of Defendants' malicious and unjustified interferences with Adamo's rights and the diminishment Defendants caused to such things as Adamo's good reputation and longstanding goodwill entitles Adamo to exemplary damages.

84.    Defendants' false statements and reckless and intention conduct has caused Adamo to incur damages in excess of Seventy-Five Thousand ($75,000.00) Dollars.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court award Plaintiff damages in excess of $75,000 to which it is entitled, including, but not limited to actual damages, economic damages, pecuniary damages, exemplary

damages, punitive damages, costs, interest and attorney fees.

## COUNT VI

## <u>SLANDER/DEFAMATION</u>

85.     Plaintiff re-alleges, restates, and incorporates by reference all allegations contained in the preceding Paragraphs of this Verified Complaint as though fully restated below.

86.     Defendants, and their agents on behalf and with consent of the Union, made false and defamatory statements concerning Adamo to third parties.

87.     The statements were not privileged.

88.     The statements were made at least negligently, and on certain occasions false statements were made recklessly, and maliciously.

89.     The statements resulted in harm to Adamo.

90.     Adamo placed highly experienced, trained and qualified, union operators on the Project, which were critical to complete the Project.

91.     The Defendants falsely told such workers things such as, but not limited to, they need to "Get off machinery," and "Immediately stop working".

92.     Said experienced, trained and qualified operators, hearing and believing the statements, acted upon them, changed their positions and relationships toward Adamo, left the machinery, ceased working, and left the job site.

93.     The false statements unequivocally concerned Adamo and resulted and precipitated shortfalls in experienced, trained and qualified operators, substantial disruptions in the Project, and resulted economic harm.

94.     The false statements further reflected on Adamo's reputation and standing by creating falsehoods and damaging impressions that Adamo had wrongfully placed such experienced, trained and qualified operators on machinery to work on the Project.

95.     Adamo's good reputation and positive relationships with experienced, trained and qualified operators is crucial to its continued success as a leading, international demolition company.

96.     The actions taken by the experienced, trained and qualified operators demonstrate they believed the false statements, and such statements and have created an ongoing diminishment of Adamo's reputation affecting these important relationships.

97.     As a result of Defendants' malicious, willful, and wanton, conduct, as set forth herein, Adamo has sustained damages including, but not limited to, economic, pecuniary damages.

98.     The nature of Defendants' malicious and unjustified interferences with Adamo's rights and the diminishment Defendants caused to such things as

Adamo's good reputation and longstanding goodwill entitles Adamo to exemplary damages.

99.    Defendants' false statements and reckless and intention conduct has caused Adamo to incur damages in excess of Seventy-Five Thousand ($75,000.00) Dollars.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court award Plaintiff damages in excess of $75,000 to which it is entitled, including, but not limited to actual damages, economic damages, pecuniary damages, exemplary damages, punitive damages, costs, interest and attorney fees.

## VERIFICATION

I declare the statements above are true to the best of my information, knowledge, and belief.

Dated: May 23, 2019

_____
RICK CUPPETILLI,
Executive Vice President
Adamo Demolition Company

Subscribed and sworn to before me this 23 day of May, 2019.

_____

Notary Public, Wayne County, Michigan
My Commission Expires: May 2, 2024

KELLY HERULA
Notary Public - State of Michigan
County of Macomb
My Commission Expires May 2, 2024
Acting in the County of Wayne

00906348-2 28

Respectfully submitted,

**CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.**

/s/ *Ronald G. Acho*
Ronald G. Acho (P23913)
Margaret Lourdes (P55601)
*Attorneys for Plaintiff*
17436 College Parkway
Livonia, MI 48152
(734) 261-2400
Dated: May 24, 2019    racho@cmda-law.com
mlourdes@cmda-law.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADAMO DEMOLITION COMPANY,
d/b/a ADAMO GROUP INC., and ADAMO
GROUP, a foreign profit corporation,

                        Plaintiff,

vs.

INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 150, and
JAMES M. SWEENEY, an individual,

                        Defendants.
_____/

CUMMINGS, McCLOREY, DAVIS &
ACHO, P.L.C.
By:  **RONALD G. ACHO** (P23913)
     **MARGARET LOURDES** (P55601)
17436 College Parkway
Livonia, MI  48152
(734) 261-2400 / FAX (734) 261-2400
racho@cmda-law.com
mlourdes@cmda-law.com
Attorneys for **Plaintiff**
_____/

## **JURY DEMAND**

Plaintiff ADAMO DEMOLITION COMPANY, d/b/a ADAMO GROUP

INC. and ADAMO GROUP, demands a jury trial on all issues.

00906548-2

Respectfully submitted,

**CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.**

/s/ *Ronald G. Acho*
Ronald G. Acho (P23913)
Margaret Lourdes (P55601)
*Attorneys for Plaintiff*
17436 College Parkway
Livonia, MI 48152
(734) 261-2400
Dated: May 24, 2019      racho@cmda-law.com
mlourdes@cmda-law.com